**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, | |
| 2138 Rayburn House Office Building Washington, D.C. 20515, | |
| *Plaintiff*, | |
| v. | Case No. 1:24-cv-815 |
| MARK DALY, in his official capacity, U.S. Department of Justice, and | |
| JACK MORGAN, in his official capacity, U.S. Department of Justice, | |
| 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530, | |
| *Defendants*. | |

# Exhibit CC



**U.S. Department of Justice**

Office of Legislative Affairs

_____

*Office of the Assistant Attorney General*                    *Washington, DC 20530*

The Honorable Jim Jordan
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Jordan:

This is a further response to the Committee's September 14, 2023, deposition subpoenas issued to line-level attorneys in the Department of Justice's (Department) Tax Division about an ongoing individual investigation and prosecution led by Special Counsel David Weiss.

The Department is committed to upholding the American people's strong interest in appropriate accountability and transparency regarding our work. This commitment is reflected by the significant resources we invest in responding to congressional requests, including this one.[1] Indeed, we have made extraordinary efforts to provide appropriate information on this matter through voluntary testimony by seven current and former senior Department officials, including Special Counsel Weiss. The Department remains committed to transparency regarding Special Counsel Weiss's investigation. As the Attorney General testified, he intends to make public as much of Mr. Weiss's final report as possible, consistent with law and Department policy.

The Department is also dedicated to protecting the American people's strong interest in public safety, the integrity of law enforcement investigations, and the evenhanded administration of justice. This dedication informs the times when we must decline to disclose information, in order to safeguard law enforcement work. The Committee is seeking to depose, under threat of criminal contempt, line-level attorneys for information inextricably intertwined with an ongoing criminal investigation and prosecution. The Committee's subpoenas encompass information Department attorneys are duty-bound not to disclose, including information protected by statutes such as 26 U.S.C. § 6103 and Federal Rule of Criminal Procedure 6(e). You have continued to pursue testimony from line-level attorneys even when reasonable and responsive alternatives have already been offered and provided. These demands implicate the very core of the Executive Branch's constitutionally assigned authority to enforce the law, as well as statutory restrictions, potential privileges, and other important confidentiality interests. It is extraordinary for Congress to attempt to compel testimony that would intrude upon so many aspects of the public's interest in the confidentiality and integrity of law enforcement work.

---

[1] *See generally* Letter from Carlos Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Jim Jordan (Jan. 20, 2023) ("January 20th Letter").

The Honorable Jim Jordan
Page 2

The Department will continue to protect the integrity of law enforcement work, on this matter and others, as we have done for decades across administrations of both political parties.[2] In light of these important interests and the extraordinary efforts we have made to provide appropriate information to the Committee, we urge the Committee to end its pursuit of additional testimony from line-level career attorneys.

### *The Department's Extraordinary Efforts*

The Department has made exceptional efforts to provide appropriate information to the Committee out of the respect and due weight the Department has given your interest in this ongoing matter.[3] Among other things, with the Department's authorization the Committee received testimony from two current U.S. Attorneys, a former U.S. Attorney, a current Tax Division Acting Deputy Assistant Attorney General, and two current senior supervisory Federal Bureau of Investigation (FBI) agents. Special Counsel Weiss himself is scheduled to testify on November 7. Although the Department has not authorized any witness to provide nonpublic, sensitive information regarding the ongoing matter, the work we have done to identify information that *can* be shared—for example, about Mr. Weiss's scope of authority—and the fact that the Department has authorized such appearances at all is extraordinary.

The Department offered testimony from three of these senior officials as an *alternative* to the Committee's continued pursuit of testimony from line-level Tax Division attorneys.[4] The Department's policy of declining to provide line attorneys for congressional testimony is longstanding and protects their safety and the integrity of their work. Our offer was, therefore, a reasonable compromise—senior officials providing responsive testimony on appropriate topics such as Mr. Weiss's authority—to avoid unnecessary conflict over line-level attorneys' testimony that could risk the integrity of an open matter. Yet you have persisted in seeking such testimony, including about meetings and conversations among investigators and prosecutors on the weight of evidence and charging decisions. This could result in exactly the kinds of disclosures that could undermine an ongoing investigation and prosecution. Indeed, as Attorney General Robert Jackson explained more than 80 years ago, disclosure of this kind of information could be of tremendous value to a defendant or prospective defendant, as it would allow counsel to know "how much or how little information the Government has, and what witnesses or sources of information it can rely upon."[5] This is in addition to risking dangerous chilling effects, statutory violations, and constitutional concerns discussed below.

---

[2] *See* Letter from Rod Rosenstein, Deputy Att'y Gen., to U.S. Sen. Charles Grassley at 6–7 (June 27, 2018) ("Rosenstein Letter") ("It may seem tempting to depart from Department policies and traditions in an effort to deflect short-term criticism, but such deviations ultimately may cause a loss of public confidence in the even-handed administration of justice. . . . I urge you and your colleagues to support us in following the rules.").

[3] *See* Letter from Carlos Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Jim Jordan (Sept. 22, 2023) ("Sept. 22 Letter"); Letter from Carlos Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Jim Jordan (Sept. 11, 2023); Letter from Carlos Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Jim Jordan (July 24, 2023); Letter from Carlos Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Jim Jordan (July 13, 2023).

[4] Sept. 22 Letter at 3.

[5] 40 Op. Att'y Gen. 45, 46 (1941) ("Jackson Opinion").

The Honorable Jim Jordan
Page 3

In any event, it is not clear why you need to speak to these particular line-level attorneys.[6] "While fact-finding by a legislative committee is undeniably a part of its task, legislative judgments normally depend more on the predicted consequences of proposed legislative actions and their political acceptability, than on precise reconstruction of past events," as may be necessary for law enforcement or judicial functions.[7] Moreover, these line attorneys did not exercise any authority over whether, where, or when to bring charges in this matter; that authority lies with Mr. Weiss, who is scheduled to appear in front of the Committee days from now. And to the extent you had questions about the role of the Tax Division, a Deputy Assistant Attorney General—one of the most senior career officials in the Tax Division—was made available to speak on that topic.

### *Confidentiality Protects Public Safety and the Fair Administration of Justice*

Keeping the American people safe from criminal and national security threats often requires confidentiality. Among other things, the Department must protect information that could reveal law enforcement sources and methods, or that could discourage witnesses from coming forward.[8] These principles are consistent and longstanding. More than 80 years ago, Attorney General Robert Jackson declined to provide FBI investigative files to Congress because "much of this information is given in confidence and can only be obtained upon pledge not to disclose its sources."[9] We have since reiterated that "[t]o demand the prosecutor's documents while the case is in progress would irreversibly taint our principles of justice," and that disclosing such information to Congress "could harm the reputations of innocent people or even place witnesses in danger of retaliation."[10] Protecting such information also avoids the serious consequences of revealing investigative methods or signaling that the Department will not keep sources confidential.

Confidentiality is also critical to ensuring that cases are prosecuted effectively and that justice is done for victims and communities. As the Department explained decades ago, "the disclosure of documents from our open files could also provide a 'road map' of the Department's ongoing investigations," including to suspects and defendants.[11] Disclosing investigative information about a suspect or defendant outside the guardrails of Department policies or the rules of evidence and due process that apply in court—with an apolitical judge as gatekeeper—

---

[6] *See Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731–32 (D.C. Cir. 1974).

[7] *Id.* at 732; *see also* Jackson Opinion at 50 ("The information here involved was collected, and is chiefly valuable, for use by the executive branch of the Government in the execution of the laws. It can be of little, if any, value in connection with the framing of legislation or the performance of any other constitutional duty of the Congress.").

[8] *See, e.g., Mandatory Disclosure of Civil Rights Cold Case Records*, 43 Op. O.L.C. __, at *10 (Feb. 4, 2019) ("Investigative files often contain factual information that could, if disclosed, compromise an investigation or prosecution, reveal sensitive investigative techniques, or endanger confidential sources.").

[9] Jackson Opinion at 46.

[10] Letter from Janet Reno, U.S. Att'y Gen, to U.S. Rep. Dan Burton at 2 (Aug. 4, 1998). *See also* Memorandum from Thomas E. Kauper, Deputy Assistant Att'y Gen., U.S. Dep't of Just., to Edward L. Morgan, Deputy Counsel to the Pres. at 3 (Dec. 19, 1969) ("Kauper Memorandum") ("The protection of individuals from the prejudicial effects of unsubstantiated information collected by the government itself has long been recognized as a major reason for the refusal to give Congress access to open investigative files.").

[11] Letter from Robert Raben, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. John Linder at 4 (Jan. 27, 2000) ("Linder Letter").

The Honorable Jim Jordan
Page 4

may risk creating claims of undue prejudice and undermine the ability of the Department to obtain an otherwise appropriate conviction.[12]

Further, as the Department observed during the Reagan Administration, producing law enforcement files to Congress could mean that "a person who is ultimately not prosecuted may be subjected to unfair and prejudicial publicity—and thus suffer substantial and lasting damage to his professional and community standing—based on unfounded allegations."[13] In addition, providing confidential law enforcement files in an ongoing matter would place Congress in a position to exert pressure over or attempt to influence the prosecution and could create the appearance of undue political influence. These concerns may be heightened in the context of certain congressional requests. As Attorney General Janet Reno asked in response to a congressional demand for nonpublic law enforcement information and prosecutorial deliberations in an open matter: "Suppose, for example, a Congressional committee wants to stop us from prosecuting someone the committee supports. What's to stop the committee from threatening Department lawyers with contempt, forcing them to produce their internal memos and making them public to everyone including the defendant's legal team?"[14]

The Committee's subpoenas directly implicate these concerns. The record is clear that the Committee seeks testimony on evidence in the case and meetings about "recommending charges" or "reasons why the Department should not charge."[15] To produce such information to Congress risks the kinds of outside influences or appearances of selective decision-making that could undermine the fair and effective administration of justice. It could also prospectively chill decision-making by Department personnel and our law enforcement partners, as well as undermine confidence in the Department's ability to protect sources, methods, and other sensitive law enforcement information from improper influence or disclosure.

### *Protecting Line Personnel and Their Work*

Across administrations, the Department has supported its personnel and safeguarded the integrity of their work by ensuring that when the Department speaks to Congress it does so through an appropriately senior official. This is true for routine as well as high-profile oversight matters. When the Department produces internal documents to Congress, it discloses the names of senior officials but protects the privacy of line personnel. When the Department appears at a hearing or sends a letter to Congress, it does so through a senior and appropriately accountable official. This policy of protecting line personnel is standard Department practice, and it has been so for decades.

---

[12] *See, e.g.*, *Response to Congressional Requests for Information Regarding Decisions Under the Independent Counsel Act*, 10 Op. O.L.C. 68, 77 (1986) (citing *Delaney v. United States*, 199 F.2d 107, 114 (1st Cir. 1952)).
[13] *Id.*
[14] Letter from Janet Reno, U.S. Att'y Gen, to U.S. Rep. Dan Burton at 2 (Aug. 4, 1998). *See also* Rosenstein Letter at 7 ("Regardless of political affiliation, thoughtful former Department leaders recognize that departures from our confidentiality policies pose an extraordinary threat to the Department's independence and integrity. . . . [D]isclosing information about criminal investigations constitutes 'real-time, raw-take transparency taken to its illogical limit, a kind of reality TV of federal criminal investigation' that is 'antithetical to the interests of justice.'").
[15] *See* Letter from U.S. Rep. Jim Jordan to U.S. Dep't of Just. Tax Division Attorney at 2 (Sept. 14, 2023).

The Honorable Jim Jordan
Page 5

Exceptions are extraordinarily rare and fact-specific. As Attorney General Garland said last year, the Department's "institutional backbone, and its historical memory, is our talented and dedicated career workforce."[16] The Department explained to Congress during the Bush Administration that we must "ensure that our line attorneys and agents can exercise the independent judgment essential to the integrity of our law enforcement activities and to public confidence in those activities."[17] We remain steadfastly committed to enabling our line personnel to do their work free from political pressures or improper influence of any kind, from any source. And because senior officials responsible for the Department's operations are the ones who "make the decisions that are the subjects of Congressional review," they "should be the ones to explain the decisions."[18]

The wisdom of this enduring approach is clear today from the very real threat of "doxing," harassment, and even physical violence against public servants and their families after being identified as working on high-profile matters.[19] As Attorney General Garland testified to the Committee last month, "what is dangerous is when anyone singles out a career prosecutor or a career FBI agent. And we know, as a matter of fact, that that kind of singling out has led to threats."[20] Indeed, the Committee has received testimony about threats and harassment of Department employees working on Mr. Weiss's investigation, specifically, as well as on other high-profile matters.[21]

The Department also must guard against the chilling effect of prosecutors and investigators being singled out as a result of their work on a high-profile matter. No one is above the law, and like cases must be treated alike. As Attorney General Garland recently testified to the Committee, "[t]here is not one set of laws for the powerful and another for the powerless, one for the rich and another for the poor, one for Democrats and another for Republicans, or different rules, depending upon one's race, or ethnicity, or religion."[22] Our line personnel must not be chilled from working on a matter, taking an appropriate investigative step, or making the right decision based on the facts and the law and nothing more.[23]

---

[16] Merrick Garland, U.S. Att'y Gen, Address to Conference of U.S. Att'ys  (Oct. 31, 2022).

[17] Letter from William E. Moschella, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Sen. Susan Collins at 1 (Mar. 23, 2005) ("Moschella Letter").

[18] *Id.*

[19] *See, e.g.*, Press Release, U.S. Dep't of Just., Two Tennessee Men Arrested for Planning Attacks on Law Enforcement Personnel and the FBI's Knoxville Field Office (Dec. 16, 2022), https://www.justice.gov/opa/pr/two-tennessee-men-arrested-planning-attacks-law-enforcement-personnel-and-fbi-s-knoxville.

[20] *Oversight of the Dep't of Just.: Hearing before the H. Comm. on the Judiciary*, 118th Cong. (2023) (statement of Merrick Garland, U.S. Att'y Gen.) ("Garland Testimony").

[21] *See* Ken Dilanian, *Threats Mount Against Prosecutors and FBI Agents Working on Hunter Biden Probe*, NBC News (Sept. 14, 2023) https://www.nbcnews.com/politics/justice-department/prosecutors-fbi-agents-hunter-biden-investigation-threatened-rcna104932; Betsy Woodruff Swan, *Chief Prosecutor of Jan. 6 Rioters Describes 'Pervasive' Threats to His Office*, Politico (Oct. 20. 2020), https://www.politico.com/news/2023/10/20/jan-6-prosecutor-pervasive-threats-00122733.

[22] *See* Garland Testimony.

[23] *See* 10 Op. O.L.C. at 77 ("Employees of the Department would likely be reluctant to express candidly their views and recommendations on controversial and sensitive matters if those views could be exposed to public scrutiny by Congress upon request.").

The Honorable Jim Jordan
Page 6

### *Respect for Congress's Important Role in Our Democracy*

The Department respects that "[t]he oversight process is, of course, an important underpinning of the legislative process."[24] Legitimate legislative oversight is necessary to Congress's constitutional role of legislating on behalf of, and being directly democratically responsive to, the American people. The Department respects that the Rules of the 118th Congress grant the Committee jurisdiction to initiate legislative inquiries regarding a range of our work.[25] Indeed, in our first letter to the current Committee we reiterated that we "share your belief that congressional oversight is vital to our functioning democracy."[26]

But legislative investigations and law enforcement investigations serve different purposes under our system of government. Our constitutional system requires that each person receive equal justice under the general laws enacted by Congress. Decisions in specific cases must be based on the law and the facts, not political factors or popular opinion. Considerations that may appropriately inform legislative policymaking must remain irrelevant to how any individual is treated in our justice system. Law enforcement authority is thus "assigned under our Constitution to the Executive and the Judiciary."[27] As the Office of Legal Counsel explained nearly forty years ago, "[t]he Framers intended that Congress not be involved in such prosecutorial decisions or in questions regarding the criminal liability of specific individuals."[28] This separation of "the power to enact laws" from "the power to execute laws" is not a mere formality, but is a constitutional protection for individual liberty.[29] Therefore, Congress's authority to conduct legislative investigations "does not lead inexorably to the conclusion that the Executive must supply the fruits of its own investigation efforts to Congress."[30]

---

[24] Linder Letter at 1.

[25] The Department's prior correspondence has noted the scope of Congress's oversight authorities in service of its legislative responsibilities. *See* Letter from Carlos Uriarte, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Jim Jordan at 3 (July 13, 2023) (noting the scope of legislative oversight authority delegated to the Committee pursuant to House Rules). The Department continues to reserve all objections to the Committee's oversight requests regarding this matter, including but not limited to the scope of, or authority for, the Committee's investigation or any particular request. *See, e.g.*, Linder Letter at 3 & nn.13–16.

[26] January 20th Letter at 2.

[27] *Trump v. Mazars LLP*, 140 S. Ct. 2019, 2032 (2020) (quoting *Quinn*, 349 U.S. at 161); *Watkins v. United States*, 354 U.S. 178, 187 (1957) (explaining that Congress is not "a law enforcement or trial agency," as those "are functions of the executive and judicial departments of government."); *Kilbourne v. Thompson*, 103 U.S. 168, 192 (1881) (concluding that the "House of Representatives not only exceeded the limit of its own authority, but assumed a power which could only be properly exercised by another branch of the government, because it was in its nature clearly judicial"); *Fletcher v. Peck*, 10 U.S. 87, 136 (1810) ("It is the peculiar province of the legislature to prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of other departments.").

[28] *See Legislation Providing for Court-Ordered Disclosure of Grand Jury Materials to Congressional Comm.s*, 9 Op. O.L.C. 86, 88 (1985) ("A legislative effort to require prosecution of specific individuals would seem to be inconsistent with many of the policies upon which the Constitution's prohibition against bills of attainder was based.") (citing *United States v. Brown*, 381 U.S. 437, 447 (1965) and *United States v. Lovett*, 328 U.S. 303, 315 (1946)).

[29] *Id.*; *see also Prosecution for Contempt of Congress of an Exec. Branch Official Who Has Asserted a Claim of Exec. Privilege*, 8 Op. O.L.C. 101, 110–12 & nn.16, 17 (1984) ("The Framers did not wish the Legislative Branch to have excessive authority over the individual decisions respecting the execution of the laws.").

[30] Kauper Memorandum at 2.

The Honorable Jim Jordan
Page 7

The Department must therefore decline to facilitate disclosures that would interfere with its investigations or prosecutions. The Committee's demands for information about charging decisions and weighing evidence pose exactly that risk. As Attorney General William French Smith explained early in the Reagan Administration, our policy against disclosing to Congress the sensitive information in law enforcement files is premised on the Executive's constitutionally assigned "responsibility to 'take Care that the Laws be faithfully executed,'"[31] and "courts have repeatedly held that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'"[32] Our policy against producing line prosecutors for testimony is grounded in significant part on this concern. Across administrations of both political parties, the Department has made clear that "congressional efforts to subpoena line prosecutors 'pose a long-term constitutional threat by impinging upon the core, judicially-unreviewable, Executive Branch function of rendering independent decisions concerning the undertaking or forbearance of criminal prosecutions.'"[33]

The American people must also have confidence that the law is being executed in an evenhanded, apolitical manner. Nearly fifty years ago Attorney General Edward Levi explained, "[n]either the law in general nor the criminal law in particular can be entirely enforced by the government. Ultimately, enforcement must spring from the faith of citizens . . . . People must believe, if not in the wisdom of a particular law, at least in the fairness and honesty of the enforcement process."[34] Congressional intrusion into ongoing Department investigations "inescapably create[s] the risk that the public and the courts will perceive undue political and Congressional influence over law enforcement and litigation decisions."[35]

In light of these principles, the Committee's subpoenas are particularly problematic given that under the relevant House and Committee Rules, Department counsel are barred from attending the depositions. The public's strong interest in the integrity of law enforcement work is one critical reason counsel for the Department must be present when agency witnesses testifying on those matters appear before Congress. Excluding agency counsel in these circumstances undermines the Executive Branch's ability to protect its confidentiality interests in the course of the constitutionally mandated accommodation process.[36] In addition, the exclusion of agency counsel interferes with the Executive Branch's ability to protect potentially privileged information, including law enforcement sensitive information.[37] The underlying principles that inform the Department's position are longstanding across administrations. Therefore, as the Office of Legal Counsel explained under Attorney General William Barr, "Congress may not

---

[31] *Assertion of Exec. Privilege in Response to Congressional Demands for Law Enforcement Files,* 6 Op. O.L.C. 31, 33 (1982) (quoting U.S. Const., Art. II, § 3).

[32] *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)).

[33] Letter from Ron Weich, Assistant Att'y Gen., U.S. Dep't of Just., to U.S. Rep. Darrell Issa and U.S. Sen. Charles Grassley at 5 (Dec. 6, 2011) (quoting Stuart Gerson, *The Legislative Politicization of the U.S. Department of Justice*, Washington Legal Foundation at 1 (Nov. 18, 1994)). *See also, e.g.*, Moschella Letter at 1.

[34] Edward Levi, U.S. Att'y Gen, Address to the Graduating Class of the FBI Academy at 9 (Mar. 20, 1975).

[35] Linder Letter at 3.

[36] *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Emps.*, 43 Op. O.L.C. __, at *2, *19 (May 23, 2019).

[37] *See also id.* at *8 (explaining that the authority to control disclosure of this information "extend[s] to *all* . . . information protected by [executive] privilege,' including . . . law enforcement files[.]" (quoting *Authority of Agency Officials to Prohibit Emps. from Providing Information to Congress*, 28 Op. O.L.C. 79, 81 (2004))).

The Honorable Jim Jordan
Page 8

compel an executive branch witness to appear without agency counsel."[38] Here, the subpoenas
issued by the Committee prohibit the attendance of agency counsel at appearances by line-level
attorneys where the Committee has indicated it will ask questions regarding information they
learned within the scope of their official duties, including regarding the ongoing criminal
investigation.[39] Because these subpoenas demand deposition testimony without agency counsel
present, they lack legal effect and cannot constitutionally be enforced.[40]

### *Protecting the Public Interest by Adhering to Longstanding Principles*

In a 1940 speech to U.S. Attorneys, Attorney General Jackson explained that "[t]he
prosecutor has more control over life, liberty, and reputation than any other person in
America[,]" and that "the greatest danger of abuse in prosecuting power lies" in the possibility
that it will be used against "some person whom he dislikes or desires to embarrass," or that the
prosecutor "selects some group of unpopular persons and then looks for an offense."[41] Thus,
"[o]nly by extreme care can we protect the spirit as well as the letter of our civil liberties, and to
do so is a responsibility of the federal prosecutor."[42] We continue to adhere to these principles
today. In a speech to U.S. Attorneys last year, Attorney General Garland said of the need for
confidentiality in law enforcement: "The health of our democracy requires that we speak through
our work and our filings in court, because anything else jeopardizes the viability of our
investigations and the civil liberties of our citizens. And the health of our democracy requires
that we adhere to these norms even when—especially when—the circumstances we face are not
normal."[43]

The Department remains willing to continue providing appropriate information to the
Committee voluntarily, consistent with these principles. We urge the Committee to work with us
to avoid unnecessary conflict, including by ceasing to pursue this testimony from line attorneys.

Sincerely,

CARLOS
URIARTE

Digitally signed by
CARLOS URIARTE
Date: 2023.10.25
15:46:02 -04'00'

Carlos Felipe Uriarte
Assistant Attorney General

---

[38] *Id.* at *2.

[39] *See id.*

[40] *See id.*

[41] Robert Jackson, U.S. Att'y Gen., Address to the Conference of U.S. Att'ys entitled "The Federal Prosecutor" at 4
(1940).

[42] *Id.* at 2.

[43] Merrick Garland, U.S. Att'y Gen., Address to the Conference of U.S. Att'ys (2022). *See also* Rosenstein Letter at
6 ("It is important for the Department of Justice to follow established policies and procedures, especially when the
stakes are high . . . We should be most on guard when we believe that our own uncomfortable present circumstances
justify ignoring timeless principles respected by our predecessors.").

The Honorable Jim Jordan
Page 9


cc:

The Honorable Jerrold L. Nadler
Ranking Member
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515