**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>*Plaintiff*,<br><br>v.<br><br>MARK DALY, in his official capacity, U.S. Department of Justice, and<br><br>JACK MORGAN, in his official capacity, U.S. Department of Justice,<br><br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530,<br><br>*Defendants*. | Case No. 1:24-cv-815 |

# Exhibit II

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-6906
judiciary.house.gov

February 22, 2024

Mr. Jack Morgan
U.S. Department of Justice
c/o Catherine S. Duval
Zuckerman Spaeder LLP
1800 M Street NW, Suite 1000
Washington, DC 20036

Dear Mr. Morgan:

    Attached to this letter please find a subpoena issued by the Committee on the Judiciary (the Committee) compelling your appearance for a deposition.

    The Committee requires your deposition testimony to further several of its critical investigative and oversight interests. As an initial matter, your testimony is necessary to assist the Committee in determining whether sufficient grounds exist to draft articles of impeachment against President Joseph R. Biden. In addition, your deposition testimony is relevant to the Committee's ongoing oversight of the Executive Branch's commitment to impartial justice, as well as its investigation into the veracity of statements made in response to congressional inquiries related to the Department of Justice's (DOJ) investigation of Hunter Biden, President Biden's son.

    On December 13, 2023, the House of Representatives adopted House Resolution 918, which directed the Committee, along with the Committees on Oversight and Accountability and Ways and Means, to continue the House's ongoing impeachment inquiry.[1] As part of its impeachment inquiry, the Committee is investigating, among other things, whether President Biden "abuse[d] his power as President to impede, obstruct, or otherwise hinder investigations or the prosecution of Hunter Biden."[2] As background, for years, the Internal Revenue Service (IRS) and DOJ have been investigating Hunter Biden for tax crimes.[3] In spring 2023, two IRS whistleblowers who were intimately involved in that investigation came forward and exposed

---

[1] H. Res. 918, 118th Cong. (2023).
[2] Memorandum from Chairmen Jim Jordan, James Comer, and Jason Smith, to Members of the H. Comm. on the Judiciary, H. Comm. on Oversight & Accountability, and H. Comm. on Ways & Means, at 29 (Sept. 27, 2023).
[3] Transcribed Interview of Gary Shapley, Supervisory Special Agent, Internal Revenue Serv. at 12 (May 26, 2023) [hereinafter "Shapley Interview"].

Jack Morgan
February 22, 2024
Page 2

several ways that DOJ had deviated from its standard processes during the Hunter Biden investigation.[4] Some of the information the Committee has uncovered suggest that political interference may have impeded the Hunter Biden investigation and prosecution, and the Committee is investigating whether President Biden (directly or through his political appointees) has in any way attempted to meddle in the investigation.

As a member of the team that was assigned to work on the Hunter Biden matter, you have firsthand knowledge of the investigation's day-to-day operations. Your testimony is thus critical to the impeachment inquiry. For example, you were present at an October 2021 "tax summit" where you, along with other members of the team, agreed to move forward with generating a prosecution memorandum that would recommend bringing criminal charges against Hunter Biden for tax years 2014 to 2019.[5] Months later, however, on June 15, 2022, you gave a presentation and argued just the opposite: that Hunter Biden should *not* be charged for the 2014 and 2015 tax years.[6] Although Hunter Biden's counsel was willing to agree to toll the statute of limitations for charges related to those tax years, DOJ ultimately allowed the statute of limitations to lapse without bringing charges.[7] The Committee must understand why DOJ decided not to bring these charges, and, given your personal knowledge of this aspect of the investigation, the Committee believes you can shed important light on that decision, including whether it was impacted by political interference.

The Committee also believes that you may be able to shed light on why the U.S. Attorney for the District of Columbia and the U.S. Attorney for the Central District of California refused to partner with the prosecution team to bring charges against Hunter Biden. Because tax charges must be filed in the judicial district where the defendant resides or where the tax return is prepared or filed, charges against Hunter Biden related to the 2014 and 2015 tax years would have needed to be filed in the District of Columbia, where Hunter Biden lived until 2017, and for later years, in the Central District of California, where Hunter Biden moved in 2017. The lead prosecutor assigned to the Hunter Biden case, David Weiss, the U.S. Attorney for the District of Delaware, could not have filed charges outside of his district before his Special Counsel appointment on August 11, 2023.[8] Thus, Weiss would have needed to partner with Matthew Graves, the U.S. Attorney for the District of Columbia, and/or Martin Estrada, the U.S. Attorney for the Central District of California, to bring charges against Hunter Biden in those districts. However, both refused to partner with him.

According to one of the IRS whistleblowers, DOJ's Tax Division authored an extensive prosecution memo recommending charges for the 2014 and 2015 tax years and presented this memorandum to the U.S. Attorney's Office for the District of Columbia in March 2022.[9] It has

---

[4] *See Id.; see also* Transcribed Interview of Joseph Ziegler, Special Agent, Internal Revenue Serv. (Jun. 1, 2023) [hereinafter "Ziegler Interview"].
[5] Ziegler Interview at 32-33.
[6] Shapley Interview at 142; *see also* Ziegler Interview at 163-164.
[7] Transcribed Interview of Hon. David Weiss, Special Counsel, U.S. Dep't of Justice at 92-94 (Nov. 7, 2023).
[8] Letter from Hon. David Weiss, U.S. Atty, U.S. Dep't of Justice, to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Jun. 30, 2023).
[9] Transcribed Interview of Hon. Matthew Graves, U.S. Atty, U.S. Dep't of Justice at 16-17 (Oct. 3, 2023).

Jack Morgan
February 22, 2024
Page 3

been reported that the first assistant in that office, a non-presidentially-appointed career prosecutor, was optimistic about bringing charges and stated she would assign a prosecutor to assist. However, just a couple of days later, according to IRS whistleblower testimony, U.S. Attorney Graves personally reviewed the report and indicated that he did not support the charges or the investigation as a whole and would not allow charges to proceed in his district.[10] Given your role on the prosecution team, and the fact that members of the Tax Division (where you worked at the time) presented the issue to the office, the Committee believes that you may be able to shed light on these events, including whether political interference played any role in U.S. Attorney Graves's failure to partner with the prosecution team. Likewise, the Committee believes that you may have insight into why the U.S. Attorney's Office for the Central District of California did not work with Weiss's team to bring charges against Hunter Biden for later tax years.[11]

The Committee has attempted to get this information from other sources but has been unable to do so. For example, witnesses, including Weiss and Lesley Wolf, a former senior member of the prosecution team, have refused to discuss with the Committee the decision to allow the statute of limitations for the 2014 and 2015 tax years to lapse, often citing concerns about revealing information related to an ongoing investigation or the deliberative process privilege. These concerns and purported privileges have no factual or legal basis.

For starters, there is no ongoing investigation related to the 2014 and 2015 tax years because the statute of limitations for those charges has lapsed. Thus, questions about DOJ's decision not to bring charges related to those years—including U.S. Attorney Graves's failure to partner with Weiss—necessarily do not involve an ongoing investigation. Beyond that, concerns about an ongoing investigation "rest[] on no constitutional privilege or case law authority," but rather on self-serving opinions issued unilaterally by the DOJ's Office of Legal Counsel (OLC).[12] These authorities are not binding on Congress and are ultimately unpersuasive. In fact, the Supreme Court has noted, contrary to DOJ's position, that "a congressional committee. . . engaged in legitimate legislative investigation need not grind to a halt" in the face of an ongoing criminal investigation.[13] In short, there is no "ongoing investigation" privilege in statutory or common law,[14] and the historical record is replete with examples of DOJ providing

---

[10] *Id.* at 24-25 & 32.

[11] The Committee also intends to ask you about these topics: the sweetheart plea deal offered to Hunter Biden; Weiss's authority, and his requests for special attorney and special counsel status; the IRS investigation involving whistleblowers Gary Shapley and Joseph Zieglar; and other issues.

[12] *Obstruction of Justice: Does the Justice Department have to Respond to Lawfully Issued and Valid Congressional Subpoenas: Hearing Before the H. Comm. on Oversight and Government Reform,* 112th Congress (2011) (statement of Morton Rosenberg, Fellow, Const. Project).

[13] *Hutcheson v. United States*, 369 U.S. 599, 618 (1962).

[14] *See* William McGurn, Opinion, *The 'Ongoing Investigation' Dodge on Hunter Biden*, WALL ST. J. (July 10, 2023) (quoting former Assistant U.S. Attorney Andrew McCarthy as stating, "The executive branch response of 'ongoing investigation' is really a political objection, rather than a legal one. There is no 'ongoing investigation' privilege."). *See also* Christopher R. Smith, *I Fought the Law and the Law Lost: The Case for Congressional Oversight Over Systemic DOJ Discovery Abuse in Criminal Cases*, 9 CARDOZO PUB. L. POL'Y & ETHICS J. 85, 107 (2010) ("To preclude Congress from investigating prosecutorial misconduct because of open investigations would completely undermine Congress's constitutional duty to investigate government misconduct, an important legislative branch check on the executive branch.").

Jack Morgan
February 22, 2024
Page 4

congressional committees with information related to ongoing criminal investigations.[15] Accordingly, there is no legal basis to withhold information from the Committee on the basis of an "ongoing" investigation,[16] especially in the context of an impeachment inquiry.

Nor does a purported deliberative process privilege prevent you from testifying before the Committee.[17] The U.S. Court of Appeals for the District of Columbia Circuit has held that "the privilege disappears altogether when there is any reason to believe government misconduct occurred."[18] As the Committee has detailed, there is substantial evidence of governmental misconduct; namely, that DOJ deviated from standard investigative procedures (including by declining to bring charges that the prosecution team originally recommended bringing) in its investigation of Hunter Biden such that he received special treatment than otherwise afforded to similarly situated Americans.[19] In short, there is no valid basis to withhold information from the Committee on the basis of the deliberative process privilege.

You have firsthand knowledge that is critical to the Committee's impeachment inquiry, and the Committee has been unable to get that information from other sources. No privilege prevents you from sharing this information with the Committee. You must appear and testify so that the Committee has the facts it needs as it investigates whether President Biden committed an impeachable offense.

The information you possess is also related to several of the Committee's legislative and oversight objectives. Pursuant to the Rules of the House of Representatives, the Committee is authorized to conduct oversight of DOJ as well as criminal justice matters in the United States to inform potential legislative reforms.[20] The Committee believes that information from your deposition will inform potential legislation including, but not limited to, reforms to the "special

---

[15] See MORTON ROSENBERG, WHEN CONGRESS COMES CALLING: A STUDY ON THE PRINCIPLES, PRACTICES, AND PRAGMATICS OF LEGISLATIVE INQUIRY, CONST. PROJECT, at 75-82 (2017) (listing numerous examples of Congress obtaining testimony related to an ongoing criminal investigation); *Obstruction of Justice: Does the Justice Department Have to Respond to Lawfully Issued and Valid Congressional Subpoenas, Hearing Before the H. Comm. on Oversight and Gov't Reform*, 112th Cong. (2011) [hereinafter *Hearing on Obstruction of Justice*] (statement of Louis Fisher, Scholar in Residence, Const. Project) ("Congress has often obtained records related to ongoing criminal investigations.").

[16] Even assuming that an "ongoing" investigation is an appropriate basis on which to withhold information from the Committee, it is certainly inapplicable with respect to your testimony relating to the 2014 and 2015 tax year charges because the statute of limitations for these charges has expired. The Department conducts investigations to determine whether sufficient evidence exists to pursue prosecution. If the Department is barred from pursuing prosecution by the expiration of the statute of limitations, it follows that any related investigation would no longer be "ongoing."

[17] *See,* Letter from Bradley Weinsheimer, Associate Deputy Attorney General, U.S. Dept. of Justice to Robert Driscoll, Manager, McGlinchey Stafford PLLC (Oct. 25, 2023) ("Department witnesses are expected to… refrain from disclosing information that has not been authorized for public release. This includes information about ongoing investigations and prosecutions, sensitive law enforcement information, and Executive Branch deliberative processes, such as those that underlie investigative and prosecutorial decisions.").

[18] *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997).

[19] *See generally* H. COMM. ON THE JUDICIARY ET AL., 118TH CONG., THE JUSTICE DEPARTMENT'S DEVIATIONS FROM STANDARD PROCESSES IN ITS INVESTIGATION OF HUNTER BIDEN (2023).

[20] Rules of the U.S. House of Representatives, R. X (2023).

Jack Morgan
February 22, 2024
Page 5

attorney" statute,[21] codifying regulations related to special counsels,[22] reforming DOJ's Tax Division, and strengthening laws protecting whistleblowers from retaliation.

When we subpoenaed you to appear for a deposition in the fall,[23] DOJ instructed you to not appear.[24] The primary basis for DOJ's instruction was that, pursuant to an OLC opinion, the Committee's subpoena was unlawful because under House rules, agency counsel could not accompany you to your deposition. DOJ's position is unpersuasive, and you have a legal obligation to appear before the Committee.

At the outset, after you are served with this legally valid and enforceable subpoena, you have a legal obligation to comply by appearing before the Committee.[25] Concerns about who can, and who cannot, attend the deposition do not affect the legality or enforceability of the subpoena itself and the legal duty to comply that flows from it. The OLC opinion cites no support for its leap that excluding agency counsel renders the subpoena itself invalid and unenforceable. On the merits of excluding agency counsel, the Constitution clearly specifies that each chamber of Congress "may determine the Rules of its Proceedings."[26] A rule that dictates who may attend committee depositions is a rule that governs House proceedings and thus easily falls within its rulemaking authority under the Constitution.

Moreover, as an extraordinary accommodation, the Committee is willing to allow agency counsel to remain physically present just outside the Committee room in which the deposition will occur and will permit a recess at any time for you and/or your personal counsel to consult with agency counsel about any matters that may arise during the deposition. The Committee believes that this accommodation will allow you to consult with agency counsel as necessary and alleviates the concerns that DOJ has articulated about proceeding without agency counsel.

To sum up, the Committee requires your testimony, and you have a legal obligation to provide it. Most importantly your testimony is directly relevant to the House's impeachment inquiry. Specifically, your testimony is critical to the question of whether President Biden abused his power to directly or indirectly impede, obstruct, or hinder DOJ's investigation or prosecution of Hunter Biden. Congress's authority to access information is broadest during an impeachment investigation,[27] a fact which even Presidents and other Executive Branch officials have

---

[21] *See* 28 U.S.C. § 515.
[22] *See* 28 C.F.R. § 600 *et seq.*
[23] Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Jack Morgan, Assistant U.S. Atty, U.S. Dep't of Justice (Nov. 1, 2023).
[24] Letter from Bradley Weinsheimer, Associate Deputy Attorney General, U.S. Dept. of Justice to Catherine Duval, Partner, Zuckerman Spaeder LLP (Nov. 2, 2023).
[25] *See. e.g.*, *Watkins v. United States*, 354 U.S. 178, 187–88 (1957)
[26] U.S. Const. art. I, § 5, cl. 2.
[27] TODD GARVEY, CONG. RSCH. SERV., LSB11083, IMPEACHMENT INVESTIGATIONS, PART II: ACCESS, at 1 (2023) ("[T]here is reason to believe that invocation of the impeachment power could improve the committees' legal claims of access to certain types of evidence relevant to the allegations of misconduct against President Biden."). *See also In re Application of Comm. on Judiciary*, 414 F. Supp. 3d 129, 176 (D.D.C. 2019) ("[D]enying [the House Judiciary Committee] evidence relevant to an impeachment inquiry could pose constitutional problems."), *aff'd*, 951 F.3d 589 (D.C. Cir. 2020*), vacated and remanded sub nom. on other grounds DOJ v. House Comm. on the Judiciary*, 142 S. Ct. 46 (2021); *In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1445 (11th Cir. 1987) (concluding

Jack Morgan
February 22, 2024
Page 6

traditionally recognized.[28] Indeed, conducting an impeachment inquiry based on anything less than all pertinent evidence would be an affront to the Constitution and irreparably damage public faith in the impeachment process.[29]

Additionally, the Supreme Court has recognized that Congress has a "broad and indispensable" power to conduct oversight that "encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys in our social, economic or political system for the purpose of enabling Congress to remedy them."[30] It is also well established that Congress may seek information from the Executive Branch about "corruption, maladministration or inefficiency in agencies of the Government."[31] Here, the Committee has documentary and testimonial evidence, obtained from whistleblowers, of corruption (e.g., preferential treatment for the President's son), maladministration (e.g., retaliation against whistleblowers), and inefficiency (e.g., frequent delays in the investigation due to unprecedented approval requirements to conduct basic investigative tasks). These are among the matters about which the Committee requires your testimony to inform potential legislative reforms.

For the reasons above, there is no valid legal basis for you to defy this subpoena. Accordingly, please find the attached subpoena compelling your appearance at a deposition.

Sincerely,

Jim Jordan
Chairman

cc:    The Honorable Jerrold L. Nadler, Ranking Member

---

that "limit[ing] the investigatory power of the House in impeachment proceedings . . . would clearly violate separation of powers principles.").

[28] *See* TODD GARVEY, CONG. RSCH. SERV., LSB11083, IMPEACHMENT INVESTIGATIONS, PART II: ACCESS, at 2 (2023) ("As a historical matter, all three branches have suggested that the House possesses a robust right of access to information when it is investigating for impeachment purposes."); Jonathan David Schaub, *The Executive's Privilege*, 70 DUKE L.J. 1, 87 (2020) ("[P]residents and others have recognized throughout the history of the country that their ability to withhold information from Congress disappears in the context of impeachment.").

[29] *See In re Application of Comm. on Judiciary* at 176 ("In authorizing disclosure of grand jury material for use in impeachment investigations of judges and of a President, courts have found this interest in conducting a full and fair impeachment inquiry to be sufficiently particularized. . . . Impeachment based on anything less than all relevant evidence would compromise the public's faith in the process."); *In re Request for Access to Grand Jury Materials* at 1445 ("Public confidence in a procedure as political and public as impeachment is an important consideration justifying disclosure."); *In re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F. Supp. 1219, 1230 (D.D.C. 1974) ("It would be difficult to conceive of a more compelling need than that of this country for an unswervingly fair [impeachment] inquiry based on all the pertinent information.").

[30] *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (internal quotation marks omitted).

[31] *Watkins v. United States*, 354 U.S. 178, 200 n.33 (1957).