# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>2138 Rayburn House Office Building<br>Washington, D.C. 20515,<br><br>*Plaintiff*,<br><br>v.<br><br>MARK DALY, in his official capacity, U.S. Department of Justice, and<br><br>JACK MORGAN, in his official capacity, U.S. Department of Justice,<br><br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530,<br><br>*Defendants*. | Case No. 1:24-cv-815 |

# Exhibit PP



**U.S. Department of Justice**

Office of Legislative Affairs

*Office of the Assistant Attorney General*  Washington, DC 20530

The Honorable Jim Jordan
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Jordan:

The Department of Justice (Department) writes in response to your letters and four subpoenas of February 22, 2024, seeking testimony regarding the ongoing investigation and prosecutions overseen by Special Counsel David Weiss.[1] All the letters indicate the House Committee on the Judiciary (Committee) issued the subpoenas in support of the House of Representatives' impeachment inquiry into whether the President "abuse[d] his power as President to impede, obstruct, or otherwise hinder investigations (including Congressional investigations) or the prosecution of Hunter Biden."[2]

The Department has already taken extraordinary steps that address your interest in this matter, including by authorizing testimony by six senior Department officials. One of those individuals was Special Counsel Weiss, who testified he was responsible for deciding whether and when to bring charges and resolved the Committee's questions about improper interference. Even so, we remain open to continued good-faith engagement with the Committee and are willing to assess whether the Department can provide additional information in response to

---

[1] *See* Letter from the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, to the Hon. Matthew M. Graves, U.S. Att'y for D.C. (Feb. 22, 2024); Letter from the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Jack Morgan (Feb. 22, 2024); Letter from the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Mark Daly (Feb. 22, 2024); Letter from the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Lesley Wolf (Feb. 22, 2024). The Department's position on the Committee's previous requests and subpoenas for testimony from these same individuals is set forth in prior correspondence, which the Department incorporates by reference here. *See* Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, (Oct. 25, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 22, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Aug. 29, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (July 24, 2023).

[2] Memorandum from the Hon. James Comer, Chairman, H. Comm. on Oversight and Accountability, the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, and the Hon. Jason Smith, Chairman, H. Comm. on Ways and Means, to Members of the H. Comm. on Oversight and Accountability, H. Comm. on Judiciary, and H. Comm. on Ways and Means (Sept. 27, 2023), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/impeachment-inquiry-scoping-memo-final.pdf.

The Honorable Jim Jordan
Page 2

written questions, consistent with our obligation to protect the integrity of Special Counsel Weiss's ongoing work.

The Department's efforts to address the Committee's interest have been extraordinary, not least because this matter is ongoing: it is currently the subject of three public indictments and prosecutions, and Special Counsel Weiss has made clear his investigation continues. Nevertheless, the Department concluded it was in the public interest to address misrepresentations and misunderstandings that could unduly harm public confidence in the evenhanded administration of justice.[3] Although the witnesses' testimony was necessarily scoped to protect the ongoing investigation and prosecutions, they were able to address the central issue in these subpoenas and the impeachment resolution: whether there was any political interference in Special Counsel Weiss's investigation, including by President Biden. Each witness said they were unaware of any such interference. Indeed, the Committee has identified no reason to believe that any evidence exists of improper interference by President Biden in the Department's work, including as described in the impeachment resolution, much less evidence that would justify the additional testimony you seek in these subpoenas.

This was already clear from the significant information the Department produced to the Committee over the course of months prior to the passage of House Resolution 918, through correspondence, documents, and authorized testimony by multiple senior officials, including Special Counsel Weiss himself. Indeed, the factual record the Committee developed in its own investigation demonstrated that this matter has been handled without political interference.[4] For example, in extraordinary testimony authorized by the Department months ago, Special Counsel Weiss testified to this Committee: "I am, and have been, the decision-maker on this case."[5] He further testified: "Throughout this investigation, the career prosecutors on my team and I have made decisions based on the facts and the law. Political considerations played no part in our decision-making."[6]

In addition to Special Counsel Weiss, the Department has made five senior officials available for transcribed interviews to address the Committee's interest in the scope of Mr. Weiss's authority to decide where, whether, and when to bring charges. Each Department witness who was asked indicated they had witnessed no political interference in Special Counsel Weiss's investigation. The witnesses also confirmed:

---

[3] *See* Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (July 24, 2023).

[4] As discussed below, the Department has not been provided with copies of the transcripts of testimony received by the Committee. However, the Department is aware of the testimony for which it was present and the limited testimony that has been made public. None of it supports the premise that the President or the White House has interfered with the investigation or prosecution, or the Department's responses to Congress on this matter. *See, e.g., Transcribed Interview of former FBI Supervisory Special Agent Before the H. Comm. on Oversight and Accountability*, 118th Cong. (July 17, 2023) at 49–50, 57–58, https://oversight.house.gov/wp-content/uploads/2023/08/FBI-SSA-Transcribed-Interview-Transcript.pdf; *Transcribed Interview of former Assistant U.S. Att'y Before the H. Comm. on Judiciary,* 118th Cong. (Dec. 14, 2023), opening statement ("I can convey that as far as I am aware, any narrative that suggests, much less insists that political influence played a role in any matter I handled, is a false one.").

[5] *Transcribed Interview of Special Counsel David Weiss Before the H. Comm. on Judiciary,* 118th Cong. (Nov. 7, 2023), opening statement.

[6] *Id.*

The Honorable Jim Jordan
Page 3

- David Weiss had authority to determine where, when, and whether to bring charges.

- David Weiss was never blocked from bringing charges or taking any investigative steps by the U.S. Attorneys for the District of Columbia or the Central District of California, whose approval or partnership he did not require to pursue charges in districts outside of Delaware.

- Nor was David Weiss ever blocked from bringing charges or taking any investigative step by the Tax Division, whose assistance and expert input on tax charges he welcomed.

- David Weiss first requested to be appointed Special Counsel in August 2023. He never requested, nor was he denied, Special Counsel status before then. When he requested Special Counsel status, he was promptly appointed.

This is the record developed by the Committee's own investigation to date.[7] As to these four subpoenas, the Committee's letters identify no evidence of any efforts by President Biden or the White House to interfere with the ongoing investigation or prosecution, or with the Department's responses to congressional requests about this matter. That is consistent with what the Attorney General has made clear repeatedly, including in testimony to this Committee, when committing that this matter would be handled independently and without improper interference.[8]

Moreover, other information the Committee is requesting, including through repeat testimony from some of the same individuals the Committee has already spoken to, simply is not pertinent to the impeachment inquiry. Many of the Committee's questions appear to focus on events from 2020, before President Biden took office, or on decisions the Committee has already learned, repeatedly, were made free from interference. And even if there were anything in the record to support—rather than rebut—allegations of improper interference with the Department's work, the Committee has not explained how the line tax attorneys and prosecutors it has requested as witnesses would have any relevant personal knowledge of such conduct by President Biden or the White House. Further, none of the four individuals the Committee now seeks to depose has responsibility for the Department's responses to congressional inquiries, including on this matter. Put simply, there is a mismatch between the information demanded and the asserted purpose and scope of the Committee's investigation, including as described in the impeachment resolution.[9]

In addition, the Committee's letters make clear it intends to question witnesses about information relating to the ongoing investigation and prosecutions and investigative steps and prosecutorial decisions made during the matter. The Committee's theory that certain aspects of the matter are closed because statutes of limitation have run on specific criminal charges is

---

[7] Although the Supreme Court has acknowledged that "[t]he very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises," that does not mean the Committee must keep going. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975).
[8] *See Oversight of the U.S. Dep't of Just.: Hearing Before the H. Comm. on the Judiciary*, 118th Cong. (Sept. 20, 2023) (testimony of the Hon. Merrick B. Garland, Att'y Gen., U.S. Dep't of Just.).
[9] *Cf. United States v. Rumely*, 345 U.S. 41, 44-45 (1953).

The Honorable Jim Jordan
Page 4

simply not correct. The Department does not concede the Committee's assertion with respect to the application of the statute of limitations and whether certain charges were foregone for that reason. Statutes of limitations relate only to specific criminal charges. Evidence of conduct or activities may be admissible and highly relevant to other charges even if the conduct or activity occurred in years prior to the indicted charges. In fact, Special Counsel Weiss specifically addressed this point when he spoke to the Committee months ago. He testified that witnesses and evidence related to conduct that could be relevant to charges from tax years whose statutes of limitation have lapsed may still pertain to his ongoing tax prosecution. In our justice system, these are judgments to be made by prosecutors, based on the law and the facts.

The Department has repeatedly explained its duty to protect the public interest in the integrity of law enforcement work, and why congressional requests for this kind of information—particularly while an investigation is open and judicial proceedings are ongoing—create serious risks to the integrity of that investigation and the fairness of those proceedings, in addition to risking dangerous chilling effects, statutory violations, and constitutional concerns.[10] Disclosing nonpublic information about ongoing investigations could violate statutory requirements or court orders; reveal road maps of our investigations including to defendants and targets; and interfere with the Department's ability to gather facts, interview witnesses, and bring successful criminal prosecutions where warranted.[11]

As the Department has made clear in this matter and across administrations, the Department speaks through its filings and its work. As Special Counsel Weiss has repeatedly indicated, he anticipates addressing the topics of interest to the Committee in a report at the end of his investigation. Under the Department's regulations, his report will include an explanation of his prosecution and declination decisions—the very topics you are interested in. The Attorney General has committed to making as much of that report public as possible, consistent with the law and Department policy.

That said, in continuation of the Department's good-faith efforts to work with the Committee, the Department is willing to receive written questions from the Committee to assess whether additional information can be provided at this time. The Department would require additional information from the Committee, including copies of the transcripts of the testimony

---

[10] *See, e.g.*, Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Oct. 25, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Sept. 22, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Aug. 29, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (July 24, 2023); Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (July 13, 2023).

[11] *See generally, e.g.*, Letter from the Hon. Carlos F. Uriarte, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary (Oct. 25, 2023); Letter from the Hon. Robert Raben, Assistant Att'y Gen., Off. of Legis. Aff., U.S. Dep't of Just., to the Hon. John Linder, U.S. H. at 3−5 (Jan. 27, 2000). *See also* the Hon. Robert Jackson, Att'y Gen., U.S. Dep't of Just., 40 Op. Atty. Gen. 45, 46 (1941) ("Counsel for a defendant or a prospective defendant could have no greater help than to know how much or how little information the Government has, and what witnesses or sources of information it can rely upon."); Fed. R. Crim. P. 6(e).

The Honorable Jim Jordan
Page 5

in this matter.[12] Months have passed since the Committee first received testimony from these individuals. During that time, the Committee has not expressed urgency or attempted follow up for information it was still seeking. It is not in keeping with comity for a co-equal branch of government for the Committee to insist that the Department compress into days what could have been done over the prior weeks and months.

      Accordingly, we ask the Committee to send written questions and transcripts to the Department at its earliest convenience and to extend additional time for the Department to respond. We also request that the Committee defer any attempts to enforce the subpoenas, which at the very least would be premature. In any event, on the basis of 2019 Office of Legal Counsel opinions, the Department has determined that the exclusion of agency counsel means the subpoenas lack legal effect and cannot constitutionally be enforced.[13]

      We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

      Sincerely,

CARLOS URIARTE
Digitally signed by CARLOS URIARTE
Date: 2024.02.29 09:40:36 -05'00'

Carlos Felipe Uriarte
Assistant Attorney General

cc:

The Honorable Jerrold L. Nadler
Ranking Member
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

---

[12] We understand from media reporting that transcripts of Department witnesses in this matter have been distributed to media outlets but not to the Department or Department witnesses.

[13] *See Exclusion of Agency Counsel from Congressional Depositions in the Impeachment Context*, 43 Op. O.L.C. __ (Nov. 1, 2019); *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 43 Op. O.L.C. __ (May 23, 2019).