IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

              *Plaintiff*,

   v.

MARK DALY, *et al.*,

              *Defendants*.

Case No. 1:24-cv-815-ACR

## **DECLARATION OF TODD B. TATELMAN IN RESPONSE TO COURT ORDER**

I, Todd B. Tatelman, declare as follows:

1. I am the Deputy General Counsel of the U.S. House of Representatives. I have served in this capacity since 2018 and have served in the Office of General Counsel since 2011. I am counsel for the Committee on the Judiciary of the U.S. House of Representatives (Committee) in this case.

2. On August 12, 2024, the Court ordered the parties to simultaneously "submit … sworn declarations from … each side's lead attorney and … one additional attorney for each side." *See* Aug. 12, 2024 Minute Order. The Court's order specified that

> [t]he declarations must describe the parties' efforts to reach a negotiated resolution, including (1) the dates when negotiations took place, (2) the locations where negotiations took place, (3) the participants in the negotiations, (4) the number of calls and emails in furtherance of the negotiations, and (5) the duration of any conversations. The declarations do not need to describe the substance of the negotiations; only the information identified above. The declarations must also include estimates for the total number of attorney hours required to litigate this case and any potential appeal, broken out by (1) approximate attorney hours spent to date, (2) expected attorney hours to draft and finalize briefing in district court, (3) expected attorney hours to prepare for and attend oral argument in district court, (4)

>expected attorney hours to draft and finalize briefing on appeal, and (5) expected attorney hours to prepare for and attend oral argument on appeal. The declarations must also estimate the cost of each category of attorney hours.

*Id.* As counsel for the Committee, I submit this declaration in response to the Court's order.

    3.     In my 13 years with the Office of General Counsel, I have participated in numerous negotiations with the Department of Justice (DOJ) attempting to resolve litigation filed by several committees of the House. These negotiations generally take place between the attorneys litigating the case (attorneys with the Federal Programs Branch of DOJ's Civil Division and attorneys with the House Office of General Counsel), as opposed to between principals at DOJ and committee Members or staff. Once litigation commences, virtually all communications between the parties occur between the litigating attorneys. Accordingly, negotiations almost always involve the exchange of written offers and counteroffers, a process that most easily facilitates the sometime multilayered consultations required between the litigating attorneys and their respective principals. The format of the negotiations here has therefore followed what has become the standard practice in disputes between DOJ and House committees.

    4.     In this case, the Committee filed its Complaint only after many months of failed negotiations and discussions between the political staff from both the Committee and the DOJ Office of Legislative Affairs. Prior experience strongly suggests that, at this stage in an interbranch dispute, further negotiations between the parties—even when all sides act in good faith, as was the case here—are unlikely to be successful because the dispute implicates significant institutional interests and has long-term ramifications that both sides believe are best resolved by judicial rulings after briefing and oral argument. Previous experience also indicates that after a Court has weighed in on the complex legal and separation of powers issues in dispute,

one or both parties, in response to that decision, demonstrate more flexibility in attempting to resolve the dispute through continued negotiations.

      5.      <u>Number of emails and calls in furtherance of the negotiations; duration of any conversations; negotiation dates, locations, and participants.</u>  The parties exchanged 57 emails in furtherance of the negotiations, many of which included letter attachments that set out detailed and substantive offers and counteroffers.  On June 10, the parties had a telephone call in furtherance of the negotiations that lasted roughly fifteen or twenty minutes.  I participated in that call on behalf of the Committee along with lead counsel, Matthew Berry, and colleagues Bradley Craigmyle and Andy Wang.  Elizabeth Shapiro and Jim Gilligan participated on DOJ's behalf.  In-person negotiations took place on April 10 and June 20.  The April 10 negotiations took place at the Office of General Counsel and lasted more than four hours.  Matthew Berry and I participated on behalf of the Committee.  Elizabeth Shapiro and Jim Gilligan participated on behalf of DOJ.  A Committee representative and a DOJ official were on site and were consulted, but they did not directly participate in the negotiations.  The June 20 negotiation took place at DOJ's office.  Matthew Berry, Bradley Craigmyle (remotely), and I participated on behalf of the Committee.  Elizabeth Shapiro, Jim Gilligan, and another DOJ attorney whom I believe was Indraneel Sur participated on DOJ's behalf.  This negotiation session lasted between 75 and 90 minutes.

      6.      <u>Estimates for the total number of attorney hours required to litigate this case and any potential appeal and cost estimates.</u>  Attorneys in the Office of General Counsel do not track or document time spent on any given project, including this litigation.  Accordingly, the time estimates below are rough approximations.  Office of General Counsel attorneys are salaried employees and do not bill Members, committees, or Officers of the House for legal services.

Hence, there are no established hourly rates for Office of General Counsel attorneys. The "Fitzpatrick Matrix" was used to compute the cost estimate for the categories below. This is the same matrix that the Civil Division of the U.S. Attorney's Office for the District of Columbia uses "in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees."[1] This litigation has had no impact on the Office of General Counsel's annual budget and has been (and will continue to be) paid for with funds already budgeted for and appropriated to the office by Congress.

    a.    An estimated 485 attorney hours have been spent litigating this case to date. The cost estimate for this time is $339,850.

    b.    It is estimated that 135 attorney hours would be spent finalizing district court briefing. The cost estimate for this is $94,150.

    c.    An estimated 70 attorney hours will be spent preparing for and attending any oral argument scheduled in district court. The cost estimate for this is $53,790.

    d.    It is estimated that attorneys in the Office would spend 145 hours drafting and finalizing any appellate briefs required. The cost estimate for this is $102,255.

    e.    An estimated 60 attorney hours will be spent preparing for and attending any appellate oral argument. The cost estimate for this is $45,530.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge. Executed on September 16, 2024, in Washington, DC.

                                              */s/Todd B. Tatelman*
                                              TODD B. TATELMAN

---

[1] *The Fitzpatrick Matrix*, justice.gov (last visited Sept. 5, 2024) (citation omitted), https://www.justice.gov/usao-dc/media/1353286/dl?inline.